## Pioneer Fire Proof Construction Co. v. Caroline Sandberg, Adm'x, etc.

1. EVIDENCE—*Conjectures Can Not Supply Proof.*—Where the cause of an accident is mere matter of conjecture, such conjecture can not supply the place of proof.

2. NEGLIGENCE—*What Does Not Prove It.*—The mere fact that a

Pioneer Fire Proof Construction Co. v. Sandberg.

hook, used in hoisting planks in the construction of a building, loosened its grip and let the planks fall, does not prove negligence on the part of the employer.

3. SAME—*Always a Question to be Proved as Averred.*—Negligence is always a question of fact to be alleged and proved as averred. It can not be supported by mere conjecture or surmise, but must be made referable to some specific cause or defect.

4. SAME—*Not to be Imputed from Methods in General Use.*—Negligence can never be imputed from the mere employment of methods in general use in the business in which an accident occurs.

**Trespass on the Case.**—Death from negligent act. Appeal from the Circuit Court of Cook County; the Hon. FARLIN Q. BALL, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Reversed and remanded. Opinion filed November 1, 1901.

**Statement.**—This was an action brought by Caroline Sandberg, administratrix of the estate of John Sandberg, deceased, for the death of her husband, the said John Sandberg. On July 17, 1897, the appellant was engaged in fire-proofing the building known as "The Fair" in Chicago. This work necessitated, in the first instance, the laying of a plank flooring at each story upon which the tile might rest until set. The work proceeded with two floors at a time. The deceased was then in the employ of the appellant and was engaged in receiving sixteen-foot plank hoisted up from the fifth to the seventh floor. The building was constructed with an air shaft in the middle about 20 x 20 feet. It was up through this shaft the planks were hoisted. The tackle used was a single pulley block that was fastened to and hung down a foot or so from a cross-beam that extended across a corner of this air shaft and rested on the eighth story floor beams. Through this pulley block ran a rope, with both ends hanging down to the fifth floor, which had just been finished and from which the planks were being taken. To one end of this rope was attached an iron hook. Men on the fifth floor wound the hook end of the rope twice about the planks, caught the hook over the rope leading from the plank to the pulley, and hoisted them away to the seventh floor, where the deceased, with another man, was stationed to receive them. The planks were sixteen feet long and were hoisted up two at a

time.   It was necessary they should go up in a perpendicular position that they might not swing and catch as they were going up, against the floors and beams.   For this reason the rope was wound around the plank from four to five feet from one end.   The distance between the seventh and eighth floors was approximately eleven or twelve feet. The steel work had been constructed or riveted together for the ninth story, or second floor above where Sandberg was receiving plank.   The work of hoisting to the seventh floor had just begun.   Not more than two loads had been landed there.   It was while receiving the second or at most the third load, that the accident occurred, which resulted in the death of the deceased.   He was standing upon a steel beam at the edge of this air shaft, drawing in this load, when the hook slipped off the rope, and the plank fell, throwing Sandberg down the air shaft to the ground.

The contention of appellee is that the pulley should have been hung higher—on the ninth floor instead of the eighth; that the pulley, placed as it actually was, left so little room that in order to raise the sixteen-foot plank in the perpendicular position necessary, clear of the seventh floor, to draw them in, jammed the hook up against the block and crowded the hook off the rope, causing the plank to fall as soon as the line was slacked a little and loosened the jam.

The deceased was at the time of his death twenty-eight years old, strong and robust.   He was earning $2 a day. There survived him his wife, the plaintiff, and a son born four months later.

AMERICUS B. MELVILLE and FRANK J. CANTY, attorneys for appellant.

CUTTING, CASTLE & WILLIAMS, attorneys for appellee.

MR. JUSTICE SHEPARD delivered the opinion of the court.

The only negligence charged in the declaration is that while the deceased "was standing upon said iron girder for the purpose of receiving such lumber as the same was hoisted to him, the said defendant carelessly and negligently so fixed the upper support for said hoisting ap-

Pioneer Fire Proof Construction Co. v. Sandberg.

paratus that the same was not far enough above the position where the said deceased was stationed, so that the lumber could be safely swung onto the iron beam upon which said deceased was stationed as aforesaid, and by reason of such carelessness and negligence on the part of the said defendant in so fixing the upper support of said hoisting apparatus the first load of lumber carried to the position occupied by the said deceased slipped from its fastenings and fell onto and upon the said deceased, and by its weight then and there on the day last aforesaid struck and forced the said deceased from the said iron beam where he had been stationed by the defendant aforesaid, so that the said deceased fell to the floor, a great distance, to wit, one hundred feet, whereby and by reason whereof the said John Sandberg was then and there killed."

We gather from the evidence that the method of taking in the lumber from the hoistway, was that when the lumber was hoisted high enough for the lower ends to be swung clear of the floor girders on which the men who received it stood, for one of the men—in this instance the deceased—to take hold of the lumber near its lower end and step back, pulling the load with him, and that as soon as he began to move back, for the rope to be slackened and thus allow the load to be drawn in and rested on the girders.

The evidence shows, or tends to show, that in this case the lumber continued to be hoisted until the hook that was holding to the rope around the lumber, was up against the pulley block, and that about half a minute afterward, when the rope was slackened to respond to the pull inward, of the load, "the planks went down," drawing the deceased after them.

It seems that the hook was in some way loosened from its hold around the rope, while it was up against the pulley block, or immediately after the rope was slackened. There is no evidence that the hook became broken or contained any defects, either in shape or substance, either before or after the accident. The evidence is, simply, that the hook let go, or went off the rope. What caused the hook to loosen its hold around the rope is not proved directly, and

can not be said to have been established by any legitimate inference to be drawn from the proof that was made. It may be it was crowded off the rope by being jammed against the block, as is said in the statement of appellee's contention, but that inference is no more certain than that it was caused by inadvertent manipulation of the rope by fellow-workmen of the deceased, or by other things that are readily presented to the mind. So far as is shown, what made the hook let go its hold is mere matter of conjecture, and conjecture in such matters can not supply the place of proof.

That the hook did not become loosened because of the negligence of appellant in the hanging of the pulley block or because of any defect, latent or otherwise, in the hook or rope, is completely negatived by the evidence introduced by the appellant.

It was shown by so many witnesses as to be beyond dispute, that the method of hoisting and hanging the appliances therefor, were the usual ones, and familiar to all the workmen, including the deceased. Nothing appears to have broken, neither the hook, the rope nor the pulley block or fastenings, nor anything else. The mere fact that the hook loosened its grip and the planks fell does not prove that the appellant was negligent in any respect declared on.

Negligence is always a question of fact that must be alleged and proved as averred. It can not be supported by mere conjecture or surmise, but must be made referable to some specific cause or defect. Dobbins v. Brown, 119 N. Y. 188.

The negligence here contended for is that the upper support of the hoisting apparatus was not far enough above the floor of the seventh story to admit of the safe swinging of the load onto the girders of that story, where the deceased was stationed to receive it. But the evidence is overwhelming that the method pursued was the usual one, and the deceased, from his long-continued employment at the same kind of work, was familiar with it. Negligence

can never be imputed from the mere employment of methods in general use in the business.    Reese v. Hersbey, 163 Pa. St. 253.

Upon the record before us we are unable to discover the evidence of any actionable negligence that the appellant was guilty of, under the declaration.

On the evidence the motion to take the case from the jury ought to have been allowed.    The judgment will have to be reversed and the cause remanded.