Mr. Justice Smith delivered the opinion of the court. The declaration consists of.two counts. In the first count it is averred “that defendant by its servants, who were not fellow-servants of the plaintiff, made default, pmd so negligently and carelessly placed two certain boxes near that portion of the freight house along which plaintiff was obliged to pass, the boxes being eight feet long, two feet .broad and twelve inches thick, that the same were apt to fall upon plaintiff and others who-might be trucking heavy weights by the same; and the plaintiff avers that defendant by its servants'had notice thereof; and also avers that by reason of the premises, while plaintiff was trucking a heavy mowing machine by said boxes, without fault of the plaintiff and without fault of any fellow-servant of the plaintiff, the boxes fell, without notice to plaintiff and struck and severely injured him.” The second count avers, after stating the duty of defendant to furnish plaintiff a reasonably safe place to work, “that in this the defendant by its servants made default, and negligently and carelessly allowed the floor along which plaintiff was obliged to wheel said truck to become shaky and worn, and that the same gave and sagged beneath the weight of said truck; and plaintiff avers that defendant also negligently and carelessly by its servants and agents piled two boxes, eight feet long, two feet broad and twelve inches thick, upon and along that part of the floor which was shaky and worn, all of which facts defendant by its servants had notice of, but plaintiff had no notice; and plaintiff avers that by reason of the premises and while he was trucking said heavy mowing machine on said floor which was shaky and worn and by said boxes the boxes, without fault of the plaintiff or of any fellow-servant, and without notice to the plaintiff, fell and struck and severely injured plaintiff,” etc. The declaration thus presents two grounds of liability : one, the defective condition of the floor, the other, the negligent piling of the boxes. Upon both of these issues it is contended on behalf of appellant that the verdict is manifestly against the weight of the evidence. The plaintiff testified that he worked for the defendant in 1899, and the second time from March until May 22, 1900; that when he first worked for defendant he was employed in unloading steel from the cars and loading the cars. During his second employment they always started to work at seven o’clock in the morning. He worked on the different floors of the warehouse doing the same work. The plaintiff and his witness Tompkutonis were working together in putting the wheels of mowers on the axles and painting the washers on the ends of the axles. When this was done they pushed the machines from the room where the work was done into another room. During the morning before the accident happened he had put the wheels on four or five frames and had pushed each one of them from the room where the work was done into section three of room three where he was injured, but did not see the boxes which fell upon him. The plaintiff further testifies that there were a great many men bringing machinery into the room and at the same time there were men taking machinery out. He did not testify to the shaky condition of the floor or to the -piling or stocking of the corn harvester boxes. . Bagdonais, called by the plaintiff, testified that he walked over the floor every day while he was employed at the defendant’s plant and that when they wheeled mowing machines over the floor, it would shake. Tompkutonis, called by the plaintiff, testified that at the time the plaintiff was injured he was working with him; the plaintiff had a partner, and he had a partner. He was nine or ten feet behind the plaintiff and saw him when he was injured. They were each pushing a machine from room two into room three, the wheel of the mower being pushed by the plaintiff was four or five feet from the boxes when they fell on the plaintiff as he was passing .them. The. witness said the mowers weighed from four hundred to five hundred pounds. He did not see the boxes before he saw them falling' on the plaintiff. He swore that the floor was not good; it was split and worn out; where the boxes were piled-it would not shake, but it would shake elsewhere. The boxes fell straight to the south, one on top of the other. Polaski, called by the plaintiff, testified that the floor was “a’little .crooked and loose in some places,” and there were some rotten places. On cross-examination he did not remember where he saw loose boards except in the gangway; that he stated on the first trial of the case that the only thing the matter with the floor was it was dirty and he had been a witness on two different trials of this case and had never before said that the floor was rotten. ’ The foregoing is the testimony offered by the .plaintiff upon the question of liability of the defendant for negligence. It should be noted that there is no evideuce on the part of the plaintiff of negligent piling or stacking the corn harvester boxes whatever, unless the fact of their falling is prima facie evidence of negligence in that regard upon the doctrine of res ipsa loquitur. On behalf of the defendant four witnesses, G-arski, Blotkie, Hoknquist and Anderson, testified as to the construction of the floor of the warehouse and the supports of the floor. From the testimony of these witnesses it appears that the building stood on stone foundations. The lower floor was about four feet above the level of the ground, and that the space between the ground and the floor and the foundation walls was filled in with cinders which were placed in there during the fall and winter and allowed to pack until the following August. During this time the cinders were flooded with water and tamped down. In August more cinders were filled in and tamped down while moist with water until they formed a solid mass around the stringers of the floor and even with the top of the stringers. Upon the foundation thus made and the stringers, two-inch planks were laid and on top of the planks one-inch maple flooring was laid. Upon the question as to the condition of the floor thus laid the defendant put in the testimony of fourteen witnesses, all of whom had been familiar with the floor for years, to the effect that the floor was sound, in good condition and firm, at the time of the accident to plaintiff. According to the testimony of many of these witnesses it did not tremble or shake or sag when heavy shredder machines weighing eighteen hundred pounds were wheeled over it. Upon this question we think the preponderance of the evidence is manifestly with the defendant, and that, as a matter of fact, the defendant was not guilty of any negligence in relation to the floor of the building where the plaintiff received his injury. The testimony of Berglund, Stone, Zacki, Hohnquist, Gleason, Ferris and Badke, called by the defendant, shows without contradiction the general manner of stacking the corn harvester boxes or crates in the warehouse, which had been in vogue for years. The evidence tends to show that the corn harvester boxes or crates were seven feet long, two feet wide and eight inches thick. They were stacked on end, leaning to the east as a rule, the lower ends of the boxes being from a foot to eighteen inches farther to the west than the upper ends. The witnesses Stone and Gleason testified that sections one and two of room three were filled with these crates in the manner above indicated on the night before the accident to plaintiff, and that- they had in the room six other boxes more than they could stack in those sections. Accordingly they stacked up three boxes in section three, leaning them to the north against the boxes stacked in section two, just east of the second iron post east of the gangway. They placed three boxes leaning to the east against the first three. The lower end» of the three boxes leaning to the north extended about six inches _ further south than the lower ends of the boxes leaning to the east. There is no conflict in the evidence as to this pile of six boxes and the manner in which they were stacked. Nor is there any conflict in the testimony that it was two of the boxes which were leaning in this fashion to the north which -fell upon the plaintiff. It is clear in our opinion that if the floor was firm, as we think it was, and if the boxes which fell upon the plaintiff were stacked or piled as the only evidence in the case on that point shows they were, no reason is given in the plaintiff’s evidence for the falling of the boxes over to the south and upon the plaintiff. • It appears to us to be a physical impossibility that the boxes should so fall without some force operating upon them directly to throw the center of gravity from the point where it was resting while they were standing in the position where they were placed the night before, to a point south of the place where the lower ends of the boxes rested on the floor. We are of opinion, therefore, that the testimony of the witnesses Garski and Radke, who saw the accident, that the plaintiff pushed the. mower against the boxes and caused them to fall, is supported by the physical situation as well as by other witnesses who after the accident saw the red paint on one of the boxes sixteen or eighteen inches from the floor, corresponding in color with the paint on the end of the axle of the machine the plaintiff was pushing, and an indentation in the box at the same place. True, the testimony of Garski and Radke is contradicted by the plaintiff and Tompkutonis, but the falling of the boxes is not accounted for by any other evidence in the case. As said in Pioneer T. P. Co. v. Sandberg, 98 Ill. App. 36, 40, “Negligence is always a question of fact that must be alleged and proved as averred. It cannot be supported by mere conjecture or surmise, but must be made referable to some specific cause or defect. Dobbins v. Brown, 119 N. Y. 188.” We are of opinion, therefore, that the preponderance of the evidence shows that the plaintiff was guilty of negligence which contributed to the injury suffered by him, in carelessly and negligently pushing the mower against the boxes and causing them to fall. There is no pretense in the evidence that the plaintiff made any complaint as to any of the conditions surrounding his work, or that the defendant promised to make any change in respect thereto. Plaintiff continued his work without objection or complaint or coercion. It is undoubtedly the law that' the servant assumes not only the ordinary risks incident to his .employment, but also the dangers which are obvious and apparent. If he voluntarily enters into or continues in the service knowing or having the means of knowing it is dangerous, he is deemed to have assumed the risks and to have waived all claims against his master for damages in case of personal injury therefrom. C. & A. R. R. Co. v. Mun-roe, 85 Ill. 25; Toledo, W. &. W. R. Co. v. Black, 88 id. 112; C. & E. I. R. R. Co. v. Heerey, 203 id. 492, 502; East St. L. I. Co. v. Crow, 155 id. 74. In Leighton, etc., Steel Co. v. Snell, 217 Ill. 155, 157, it is said: “While every person in undertaking to work, assumes the risk ordinarily incident to his employ^ ment, he only agrees to labor in the situation and with the tools provided, and in so far as the condition of these is apparent, or may be ascertained by the exercise of ordinary diligence and care, he assumes the risk.” Plaintiff had worked oh the different floors of the warehouse from March to May 22nd, doing the same kind of work. He had worked on the floor where he was injured the day before the accident all day. He had been in the same section and over the same floor, and by the pile or stack of boxes several times on the day of his injury. He was familiar without doubt with the manner in which the work was done and the boxes were stacked. The condition of the floor and the way the boxes which fell on him were standing were visible and known to him. He must be held to have assumed the risk of the usual and ordinary hazards of the business to which he was exposed, and also all the risks which were open and apparent and could be ascertained by the exercise of ordinary diligence and care. C. & E. I. R. R. Co. v. Heerey, supra. Plaintiff’s opportunities for seeing and knowing the danger from which he suffered are clearly established. From the record before us we are unable to find that appellant was guilty of any actionable negligence averred in the declaration. We think further, that the plaintiff assumed the risks, of his employment and cannot recover. On these grounds the judgment is reversed with a finding of fact. Reversed with finding of fact. Mr. Justice Baker dissenting.